IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DEXTER OMAR KIRKLAND,**                                :
                                                        :
      **Petitioner**                               :          **CIVIL NO. 1:CV-06-01447**
                                                        :
**v.**                                                  :          **(Judge Rambo)**
                                                        :
**RAYMOND J. SOBINA, *et al.*,**                        :
                                                        :
      **Respondents**                             :

# M E M O R A N D U M

Presently before the court is an amended petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, filed by petitioner Dexter Omar Kirkland ("Kirkland"),

an inmate currently incarcerated at the State Correctional Institution at Forest ("SCI-

Forest") in Marienville, Pennsylvania. (Doc. 10.) Kirkland is challenging his state

sentence in the Court of Common Pleas for York County, Pennsylvania ("trial

court"). For the reasons that follow, the petition will be denied.

## I.    Background

The events leading to the conviction and sentence of Kirkland, as recounted by

the Pennsylvania Superior Court, are as follows. On October 20, 2001, at

approximately 2:30 a.m., Kevin Washington was driving his vehicle through the city

of York. (Doc. 23-4 at 1.) While stopped at a stop sign, Kirkland and a female

companion approached Mr. Washington's vehicle, and Kirkland asked for a light for

his cigarette.  (*Id*.)  Kirkland then opened the front passenger door and entered the

vehicle, while the woman entered through the rear door.  (*Id*.)  Kirkland brandished

an X-Acto knife, threatened to cut Mr. Washington's throat, and directed him to park

the vehicle in a nearby alley.  (*Id*.)  Once in the alley, Kirkland began waiving the

knife at Mr. Washington's throat, slicing Mr. Washington's arm and leg as he

attempted to defend himself.  (*Id*.)  He also demanded money from Mr. Washington

and threatened to kill him if he did not comply.  (*Id*. at 1-2.)  Once Mr. Washington

informed Kirkland that he had no money, the woman said, "Let's go, Dex," and the

two fled the scene.  (*Id*. at 2) (citing Notes of Testimony, Trial, 5/14/02, "NT __", at

50.)  Mr. Washington immediately summoned the police.  (Doc. 23-4 at 2.)

Sergeant Erik Kleynen of the York City Police Department spoke with Mr.

Washington once he arrived at the scene.  (*Id*.)  Appearing "visibly shaken," Mr.

Washington described the assailants and then was transported to the police station.

(*Id*.) (citing NT 69.)  At the station, Sergeant Kleynen used an "imaging machine,"

which collects photographs from a statewide database, to create a photographic array

of possible suspects.  (*Id*.)  Based on the description provided by Mr. Washington,

Sergeant Kleynen identified Kirkland as a possible suspect and "put [his]

information" into the imaging machine.  (*Id*.) (citing NT 69.)  He also programmed

the machine to select seven other individuals at random to place in the photographic

2

array.  (Doc. 23-4 at 2.)  Mr. Washington examined the array and initially selected

two photographs.  (*Id*.)  When Sergeant Kleynen followed up, asking Mr. Washington

to identify one photograph from the eight in the array, Mr. Washington identified

Kirkland as the assailant.  (*Id*.)

Kirkland was charged with robbery, *see* 18 Pa. C.S.A. § 3701(a)(1)(ii), and

aggravated assault, *see* 18 Pa. C.S.A. § 2702(a)(1).  A jury trial commenced on May

14, 2002.  The Commonwealth presented Mr. Washington and Sergeant Kleynen as

witnesses.  On direct examination, Mr. Washington made an in-court identification of

Kirkland as his assailant.  (Doc. 23-7 at 54-55.)  Mr. Washington also stated that,

when shown the photographic array at the police station, he initially could not decide

between two of the eight photographs, but when asked to choose one, he identified

Kirkland.  (*Id*. at 57-58.)  Kirkland's attorney, Eugene R. Campbell, Esq., did not

object to the in-court identification made on the basis of the photographic array.

However, on cross-examination, Attorney Campbell challenged Mr. Washington's

credibility by asking him why he was unable to clearly identify his assailant in the

photographic array, which was shown to him within a half hour of the incident, even

though he stated that he had had a clear view of the individual in his vehicle.  (Doc.

23-8 at 6-7.)  The Commonwealth's other witness, Sergeant Kleynen, testified about

the procedure he used to compile the photographic array for Mr. Washington.  At no

3

point did any counsel question Sergeant Kleynen about how he knew to enter

Kirkland's "information" in the imaging machine for use in the array.

On May 15, 2002, the jury found Kirkland guilty of one count of robbery and

one count of aggravated assault.  On August 12, 2002, the trial court sentenced

Kirkland to a term of imprisonment of not less than seven and one half (7 ½) nor

more than fifteen (15) years on both counts, to be served concurrently.

Following his sentencing, Kirkland filed a post-sentence motion in the trial

court on August 21, 2002, which was denied on August 29, 2002.  Kirkland

subsequently filed a notice of appeal in the Pennsylvania Superior Court on

September 17, 2002.  In that appeal, Kirkland set forth a claim that the trial court had

erred in its instructions to the jury on the aggravated assault charge.  (Doc. 23-5 at 2.)

The Superior Court affirmed the conviction and judgment of sentence by

memorandum opinion dated August 8, 2003.  *Commonwealth v. Kirkland*, 833 A.2d

1146 (Pa. Super. Ct. 2003) (Table).  The Pennsylvania Supreme Court denied

Kirkland's petition for allowance of appeal on February 25, 2004.  *Commonwealth v.*

*Kirkland*, 844 A.2d 552 (Pa. 2004) (Table).

On March 30, 2004, Kirkland filed a *pro se* petition for post-conviction

collateral relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.

C.S.A. § 9541, *et seq*., in the trial court.  The trial court, now serving as the PCRA

4

court, appointed counsel, and an amended petition was filed.  The PCRA court held a

hearing on September 27, 2004, and summarily denied the petition on that same day.

Pursuant to a directive of the PCRA court, Kirkland filed a statement of matters

complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure

1925(b) on November 16, 2004.  In a 1925(a) statement filed December 10, 2004, the

PCRA court affirmed the denial of the PCRA petition.  (Doc. 23-3.)

Kirkland appealed to the Superior Court and raised three issues: trial counsel

was ineffective for failing to (1) challenge the use and admissibility of the

photographic array at trial; (2) file a motion to suppress the victim's out-of-court

identification of Kirkland; and (3) request a jury instruction on simple assault.  (Doc.

23-4 at 3.)  On August 9, 2005, the Superior Court affirmed the denial of post-

conviction relief.  *Commonwealth v. Kirkland*, 885 A.2d 577 (Pa. Super. Ct. 2005)

(Table).  On December 27, 2005, the Pennsylvania Supreme Court denied Kirkland's

request for allowance of appeal.  *Commonwealth v. Kirkland*, 891 A.2d 730 (Pa.

2005) (Table).

Kirkland filed a second or successive petition on January 30, 2006.  However,

as his judgment of sentence was final on May 25, 2004, he was outside the one-year

statute of limitations.  Thus, the PCRA court dismissed the second PCRA petition as

untimely.

On July 24, 2006, Kirkland filed the instant petition for a writ of habeas corpus, as amended on September 28, 2006. (*See* Doc. 10.)  He raises four claims relating to his conviction:[1] (1) the Commonwealth impermissibly withheld information that the witness initially picked another individual out of the photographic array; (2) the trial court erred in permitting the victim to make an in-court identification of Kirkland based on an unreliable out-of-court identification through the photographic array; (3) trial counsel was ineffective for failing to object to the admission of the photograph of Kirkland in the photographic array acquired through the statewide database; and (4) trial counsel was ineffective for failing to request a jury instruction on simple assault.

## II.   **Discussion**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to

---

[1]  Kirkland's claims presented in the instant habeas petition have been re-numbered in order to facilitate the discussion herein.

claims based "on the ground that [petitioner] is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see also*

*Estelle*, 502 U.S. at 68; *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir. 1997).

## A.  <u>Exhaustion and Procedural Default</u>

It is well established that all claims that a petitioner in state custody attempts to

present to a federal court for habeas corpus review must have been fairly presented to

each level of the state courts.  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ

of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has

exhausted the remedies available in the courts of the State"); *O'Sullivan v. Boerckel*,

526 U.S. 838, 844 (1999); *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).  "The

exhaustion requirement ensures that state courts have the first opportunity to review

federal constitutional challenges to state convictions and preserves the role of state

courts in protecting federally guaranteed rights."  *Caswell v. Ryan*, 953 F.2d 853, 857

(3d Cir. 1992).  The burden of establishing that such claims were "fairly presented"

falls upon the petitioner.  *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

*See also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the

necessary 'opportunity,' the prisoner must 'fairly present' his claim in each

appropriate state court (including a state supreme court with powers of discretionary

review), thereby alerting that court to the federal nature of the claim.").  The

7

petitioner must show that "the claim brought in federal court [is] the substantial equivalent of that presented to the state courts." *Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989) (citations omitted).

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *McCandless*, 172 F.3d at 260.

Upon a finding of procedural default, review of a federal habeas petition is barred unless the habeas petitioner can show that "(1) the procedural rule was not independent and adequate; (2) cause for his failure to comply with state procedural rules and prejudice resulting therefrom; or (3) that a fundamental miscarriage of justice will occur if not considered." *Peterkin v. Horn*, 176 F. Supp 2d 342, 353 (E.D. Pa. 2001), *amended by* 179 F. Supp 2d 518 (E.D. Pa. 2002). *See also Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir. 1996).

First, "[a] state [procedural] rule provides an independent and adequate basis for precluding federal review of a state prisoner's habeas claims only if: (1) the state

8

procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state court's refusal in this instance is consistent with other decisions." *Id.* at 683-84.  "A state [procedural] rule is adequate only if it is 'consistently and regularly applied.'" *Id*. at 684 (citations omitted).

Next, a federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See Coleman*, 501 U.S. at 750-51; *McCandless*, 172 F.3d at 260.  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Lastly, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage

9

of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger*, 266 F.3d at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496.

### B.    Standard of Review for Habeas Cases

Kirkland's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The provisions of AEDPA relevant to the instant petition provide as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). With respect to § 2254(d)(1), a federal habeas petitioner is entitled to relief under the "contrary to" clause only if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The *Williams*

Court was careful to note that most cases will not fall into this category, which is limited to unequivocal contradiction of Supreme Court authority.  *Id*. at 406-08.  *See also Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (holding that to prove entitlement to relief under the "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's;  . . . petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome.") (emphasis in original).

Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.  Relief is appropriate only where the state court decision is also objectively unreasonable.  *Id*.  *See Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000) (holding that a federal habeas court should not grant the petition unless the state court decision evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent).

With respect to 28 U.S.C. § 2254(d)(2), which dictates that federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, the petitioner must demonstrate that a reasonable fact-finder could not have reached the same

11

conclusions given the evidence.  If a reasonable basis existed for the factual findings

reached in the state court, then habeas relief is not warranted.  *Campbell v. Vaughn*,

209 F.3d 280, 290-91 (3d Cir. 2000).  Furthermore, "a determination of a factual issue

made by a State court shall be presumed to be correct.  The applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1).

### C.   Standard for Ineffective Assistance of Counsel Claims

Kirkland's claims allege ineffective assistance of counsel.  Before the court

addresses the merits of these claims, the court will first review the standards used to

evaluate an ineffective assistance claim.

The Sixth Amendment guarantees the right to effective assistance of counsel

for civil defendants.  The applicable federal precedent for ineffective assistance

claims is the well-settled two-prong test established by the Supreme Court in

*Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, in order to merit

habeas relief based on a claim of ineffective assistance of counsel, a petitioner must

demonstrate that: (1) his attorney's representation fell below an objective standard of

reasonableness; and (2) there exists a reasonable probability that, barring counsel's

ineffectiveness, the result of the proceeding would have been different.  *Id*. at 688-89.

To satisfy the first prong of the *Strickland* test, a petitioner is required to show that

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (citation omitted).

To satisfy the second prong of *Strickland*, a petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*.  It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *United States v. Fulford*, 825 F.2d 3, 9 (3d Cir. 1987).

At the time the state courts reviewed the claims, *Strickland*'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective

assistance of counsel claims.  Under Pennsylvania state jurisprudence, a three-prong

test is applied to ineffective assistance of counsel claims, but is, in substance,

identical to the *Strickland* test.  *See, e.g.*, *Commonwealth v. Pierce*, 527 A.2d 973,

975-77 (Pa. 1987).  The Third Circuit Court has held that Pennsylvania's test for

assessing ineffective assistance of counsel claims is not contrary to *Strickland*.

*Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005); *Werts v. Vaughn*, 228 F.3d 178,

204 (3d Cir. 2000).  Thus, under § 2254(d)(1), the relevant inquiry in assessing

ineffectiveness claims that have been adjudicated on the merits is whether the state

court's decision involved an unreasonable application of *Strickland*.  *Jacobs*, 395

F.3d at 107 n.9; *Werts*, 228 F.3d at 204.

## III.   Petitioner's Claims

### A.   Claims Relating to the Photographic Array

Kirkland's first three claims all relate to the photographic array process used to

identify Kirkland as the assailant at trial.  The court will discuss these claims in turn.

#### 1.   *Brady* Violation

Initially, Kirkland claims that the Commonwealth violated his due process

rights under *Brady v. Maryland*, 373 U.S. 83 (1963),[2] by failing to disclose that their

---

[2]  In *Brady*, the United States Supreme Court held that the prosecution has a
duty to make available to the defense any evidence which is both material and

witness, Mr. Washington, initially identified someone other than Kirkland in the photographic array.  Respondents maintain that Kirkland failed to raise this issue either on direct appeal or in his first, timely PCRA petition.  (Doc. 23 at 7.)  The record reflects that Kirkland's court-appointed trial counsel did not raise this issue on direct appeal. (Doc. 10-2.)  However, Kirkland did, in fact, raise this *Brady* claim in his *pro se* PCRA petition, filed on March 22, 2004.  (Doc. 23-2 at 7.)  Kirkland asserts that, against his wishes, his court-appointed PCRA counsel chose not to raise the claim in his appeal to the Pennsylvania Superior Court.[3]  As a result, the state appellate court was not given an opportunity to consider the merits of the claim, either on direct or collateral review.  Thus, Kirkland has not satisfied the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A); *see also Lines*, 208 F.3d at 160 ("Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims.")

---

exculpatory.  In order to establish a *Brady* violation, the defendant must show "(1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material to the issues at trial." *United States v. Burroughs*, 830 F.2d 1574, 1577-78 (11th Cir. 1987).  In addition, under *Brady*, such suppression violates due process, "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

[3]  For issues raised in Kirkland's appeal to the Superior Court, *see supra* p. 5.

Additionally, Kirkland is now precluded from raising this issue in another PCRA petition because such a petition is now barred by the one-year statute of limitations. *See* 42 Pa. C.S.A. § 9545(b)(1) (PCRA petition generally must "be filed within one year of the date the judgment becomes final."). *Whitney v. Horn*, 280 F.3d 240, 251 (3d Cir. 2002) ("It is now clear that this one-year limitation is a jurisdictional rule that precludes consideration of the merits of any untimely PCRA petition, and it is strictly enforced in all cases, including death penalty appeals."). Indeed, his second or successive PCRA petition was denied by the PCRA court as untimely, as it was outside the one-year statute of limitations. Accordingly, Kirkland has procedurally defaulted on this claim and the court may not consider the merits unless he establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his default. After a review of the record, the court finds that he has made no such showing.[4]

Again, to demonstrate cause for a procedural default, the petitioner must show that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule. *Carrier*, 477 U.S. at 488. In the instant case, Kirkland alleges that the "cause" for his procedural default was his court-appointed counsel's

---

[4] The court will not address the "miscarriage of justice" exception here because Kirkland presents no evidence of actual innocence. *See Carrier*, 477 U.S. at 496.

16

failure to raise the *Brady* claim on direct appeal and on appeal to the Superior Court. This claim of ineffective assistance of counsel, however, is insufficient to sustain Kirkland's burden of showing "cause" for his default.

In *Edwards v. Carpenter*, 529 U.S. 446 (2000), the Supreme Court acknowledged that assistance of counsel which is so ineffective as to violate the Federal Constitution is adequate to establish "cause" for the procedural default of another constitutional claim. *Id*. at 451. However, that ineffectiveness of counsel claim is *itself* an independent constitutional claim that must "be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." *Id*. (quoting *Carrie*r, 477 U.S. at 489).

In the present case, Kirkland did present such a claim of ineffectiveness of counsel in his PCRA proceedings. Specifically, in its opinion dated August 9, 2005, the Superior Court addressed Kirkland's claim that trial counsel was ineffective for failing to seek suppression of Mr. Washington's out-of-court identification of Kirkland, and that "the identification was tainted because the victim did not identify [Kirkland] as the perpetrator until Sergeant Kleynen 'prodded' Mr. Washington to select one of the two suspects he initially identified." (Doc. 23-4 at 7.)

In analyzing whether this claim constituted ineffective assistance of counsel, the Superior Court found that the record did not support Kirkland's contention that

17

Sergeant Kleynen's actions tainted Mr. Washington's identification of Kirkland.  The court reasoned, "The fact that Sergeant Kleynen instructed Mr. Washington to choose one photograph from the two he initially selected from the display did not constitute a viable basis for challenging the validity of the identification." (*Id*.)  Specifically, Sergeant Kleynen testified at the PCRA hearing that, "[i]nitially [Mr. Washington] selected two subjects, No. 1 and 2, that he has indicated.  I asked him looking at all of them to select one.  He then pointed out Mr. Kirkland's [photograph]." (Doc. 23-8 at 13.)  The court also found no indication of wrongdoing on the part of Sergeant Kleynen.  (Doc. 23-4 at 7.)  As a result, the court determined that Kirkland's underlying claim that the identification was tainted lacked arguable merit, and therefore trial counsel was not ineffective for failing to file a suppression motion on this issue.  (*Id*.)  *See Pierce*, 527 A.2d at 975-77.

The court agrees with the reasoning of the Superior Court.  There is nothing in the record to indicate that Sergeant Kleynen's actions impermissibly influenced Mr. Washington's identification of Kirkland.  The Superior Court's decision, based on its application of the standard for ineffectiveness of counsel under Pennsylvania law, *see Pierce*, is not an unreasonable application of *Strickland*.  Because the ineffective assistance of counsel claim fails, Kirkland has failed to establish "cause" for the procedural default of the underlying claim of an alleged *Brady* violation with respect

18

to the identification.  Consequently, Kirkland is precluded from pursuing federal

habeas corpus relief with regard to this issue.

### 2.    Suggestive Photographic Array

Kirkland asserts that his due process rights were violated by an identification

procedure which was "so impermissibly suggestive as to give rise to a very

substantial likelihood of irreparable misidentification."  (Doc. 11 at 4) (citing

*Simmons v. United States*, 390 U.S. 377, 384 (1968)).  Specifically, Kirkland argues

that his photograph was "different from all the others in that his face was enlarged,

virtually blocking out the entire background."  (Doc. 11 at 4.)  He also states that,

"[t]he effect of this characteristic is to make the petitioner['] s picture stand out from

the rest, ensuring that the victim will point him out."  (*Id*.)  Kirkland raised this issue

in his first PCRA petition.

In determining that Kirkland's trial counsel was not ineffective for failing to

object to the photographic array based on this claim, the PCRA court found that "a

review of the photo array will demonstrate that the eight individuals depicted vary in

regards to their apparent distance from the camera during the photographing process."

(Doc. 23-3 at 7.)  The Superior Court agreed, stating that the record supported this

determination, and that "the men pictured in the array were situated at varying

distances from the camera, but no one was featured so prominently as to render the

array unduly suggestive." (Doc. 23-4 at 8) (citing *Commonwealth v. Wilcox*, 392 A.2d

1294 (Pa. 1978) (witness' in-court identification of defendant after viewing him for

ten seconds sufficient)).

Upon review, the court has determined that the record supports the state court

findings.  Essentially, there is nothing in the record to suggest that Mr. Washington

chose Kirkland's photograph in the array based on the fact that his face was shown

more closely than the eight other faces.  Accordingly, the court concludes that the

state court's reasoning here did not "result[ ] in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d)(2).  In other words, the record, including the

trial testimony and the photographic array itself, provided a reasonable basis for the

factual findings of the state court.  *See Campbell*, 209 F.3d at 290-91. Thus, federal

habeas relief is not warranted on this issue.

### 3.    Implication of Prior Criminal Activity

Kirkland contends that the trial court erred in permitting Sergeant Kleynen to

testify about the identification procedure, and in permitting the photographic array to

be admitted into evidence, because both implied Kirkland's prior criminal activity.

He also claims his trial counsel was ineffective for failing to object to both the

testimony and introduction into evidence of the photographic array.  Kirkland raised

these issues in his first PCRA petition.

At trial, Sergeant Kleynen testified that after Mr. Washington provided a

description of the assailant, Sergeant Kleynen asked him to accompany him to the

York City Police Station.  Sergeant Kleyen then testified, "[The police station] ha[s] a

photo imaging machine that is used to collect photos that has a data base throughout

the state.  With that information, I put Mr. Kirkland's information into it as a possible

suspect, and then asked the computer to select seven others randomly."  (Doc. 23-8 at

12-13.)  The photographic array that was produced contains, at the top of the page,

identification markers of the York City Police Department, as well as the

Department's shield.

Kirkland contends that Sergeant Kleynen's testimony, coupled with the

introduction into evidence of the photographic array, suggests prior criminal conduct.

The PCRA court disagreed.  In its 1925(a) statement, the PCRA court found that

while the photographic array did contain identification markers of the York City

Police Department, "the individual photographs of the eight individuals do not in any

way depict or demonstrate prior criminal activity or police conduct."  (Doc. 23-3 at

6.)  The court further found that Sergeant Kleynen's testimony represented the

preparation of the photographic array rather than any suggestion of prior criminal

21

conduct.  In addition, the PCRA court observed, "that Sergeant Kleynen's reference

to the collection of photos through a statewide database should not be considered as a

suggestion of prior criminal conduct.  Photographs are available from other sources

including driving records and licensing procedures."  (*Id*. at 7.)  Recognizing that

under Pennsylvania law "photographs used during an identification procedure must

be analyzed under the facts and circumstances of each particular case,"[5] (*Id*. at 6-7),

the PCRA court concluded that the photographic array was not suggestive of prior

criminal conduct, and that, therefore, trial counsel's failure to object to it was not

ineffective representation.

     In its opinion affirming the PCRA court decision, the Superior Court concluded

that "Sergeant Kleynen's testimony regarding the photographic array could not have

affected the verdict because it did not reasonably imply prior criminal activity."[6]

(Doc. 23-4 at 6.)  The court also stated,

---

[5] The PCRA court cited *Commonwealth v. Cambridge*, 563 A.2d 515, 517 (Pa. Super. Ct. 1989), a case in which the Superior Court concluded that the use of "mugshots" in a photographic array does not strip the defendant of the presumption of innocence.

[6] In support, the court discussed *Commonwealth v. Allen*, 292 A.2d 373, 375 (Pa. 1972), which held that a new trial is warranted if the "photographic inference" made at trial supported a reasonable conclusion that the accused had engaged in prior criminal activity.

> [T]here were no direct or indirect references to prior criminal activity at trial. The challenged testimony implied only that [Kirkland] had had prior contact with police; however, the nature of that contact remained unclear because Sergeant Kleynen did not explain how [Kirkland]'s photograph became part of the data base. Therefore, [Kirkland]'s prior contact with police could have occurred under circumstances unrelated to criminal activity.

(*Id*.) In addition, the court also found that the use of York City Police Department stationary for the photographic array was to be expected because the array was compiled on the imaging machine in the police station. (*Id*. at 7.) "As there was an innocent explanation for the use of the stationary, we concur with the PCRA court's determination that [Kirkland] was not prejudiced by the fact that the jury was permitted to view the array on police department stationary." (*Id*.) (citing *Commonwealth v. Lawrence*, 596 A.2d 165, 169 (Pa. Super. Ct. 1991) (concluding that appellant is not entitled to a new trial on the basis that the jury viewed police photographs since there was no testimony about how the photo became part of the police files or any prior criminal conduct)).

As noted above, the Superior Court found as a matter of state law that the trial court did not commit error in permitting Sergeant Kleynen's testimony or the introduction into evidence of the photographic array. This court is bound by this Superior Court finding. *See Rosemeyer*, 117 F.3d at 115 ("[O]nly in extraordinary and compelling circumstances should a federal district court in a habeas corpus case

decline to follow the opinions by a state intermediate court of appeal with respect to state law rendered in earlier proceedings involving the petitioner.").  Further, since the state law claim underlying the ineffectiveness of counsel is meritless, this court cannot find that counsel was ineffective for failing to raise an objection at trial.  *See Sanders*, 165 F.3d at 253 (determining counsel cannot be ineffective for failing to pursue meritless claims of objections).  Moreover, any objection by trial counsel on federal due process grounds would have been meritless.  *See United States v. Hines*, 470 F.2d 225, 228-29 (3d Cir. 1973) (finding no constitutional error in admitting testimony that photographs of defendant were used in pretrial identification when testimony was used to buttress in-court identifications, and probative value of such evidence over-balanced potentiality for prejudice).  Thus, Kirkland's final claim here with respect to the photographic array also should be denied.

### B.    Claim Relating to Aggravated Assault Charge

Kirkland contends that trial counsel was ineffective for failing to request a jury instruction on simple assault.  In support, Kirkland argues that a simple assault instruction should have been given because "trial testimony solicited that the perpetrator was not restrained from escalating his attack on the complainant which points decisively to an intent to frighten, not harm."  (Doc. 11 at 5.)

At trial, Mr. Washington testified that Kirkland got into his vehicle while he was stopped at a stop sign.  (Doc. 23-7 at 53.)  Kirkland held out a X-Acto knife and threatened to cut Mr. Washington's throat unless he gave him all his money.  (*Id.*) While making these threats, Kirkland was "chopping" at Mr. Washington.  (*Id.* at 55.) Mr. Washington put up his arms in self-defense, sustaining several cuts on his arms in the process.  (*Id.*)  As a result of this testimony, the trial court gave the jury an instruction on aggravated assault only.[7]

───────────────

[7]  The trial court instructed the jury as follows:

[I]n order to find the Defendant guilty of aggravated assault, you must find that each of the following elements has been established beyond a reasonable doubt:

First, that the Defendant attempted to cause serious bodily injury to Mr. Washington.  In order to find that the Defendant attempted to do this, you must find that he engaged in conduct which constituted a substantial step towards causing serious bodily injury to Mr. Washington, and, second, that the Defendant's conducted [sic] in this regard was intentional or, in other words, that it was his conscious object or purpose to cause serious bodily injury.

(Doc. 23-8 at 49.)

Kirkland raised the instant claim in his first PCRA petition.[8]  At the PCRA hearing, Kirkland's trial counsel testified that he did not request an instruction on simple assault

> because of the fact that he was also charged with robbery, and I had discussed with him at length the fact that his position was that the aggravated assault did not happen because, as he testified today, the small knife and the superficial wounds and what have you, and if the jury found him guilty of robbery and simple assault, it would be worse than if they found him guilty of the robbery and not guilty of aggravated assault. So by having the aggravated assault the more serious charge it only gave them an opportunity to find him guilty or not guilty of that.  They couldn't cop out with a lesser charge of simple assault.

(Doc. 23-6 at 56.)

The PCRA court denied Kirkland's claim, and in its 1925(a) statement the court noted that it "has no obligation to charge upon an offense which has no application to the evidence presented at trial."  (Doc. 23-3 at 7.)  Citing *Commonwealth v. Channell*, 484 A.2d 783 (Pa. Super. Ct. 1984), the court stated that a trial court "must charge on a lesser included offense only where there is some disputed evidence concerning an element of the greater charge or if the undisputed

---

[8] On direct appeal, Kirkland claimed that the jury instructions were deficient, arguing that "[w]here there is an attempt to commit serious bodily injury, the trial court must instruct the jury that the defendant had the specific intent to cause bodily injury."  (Doc. 23-5 at 3.)  Kirkland did not, however, argue specifically for an instruction on simple assault.  The Superior Court did examine the jury instruction on aggravated assault given at trial, and concluded that the trial court "sufficiently and accurately apprised the jury of the law."  (*Id*. at 4.)

evidence is capable of more than one rational reference." (*Id*. at 7-8.)  The court determined that, "[a]lthough concededly the wounds turned out to be superficial in nature and did not require medical attention, there was sufficient evidence to submit the case to the jury on the charge of Aggravated Assault on the basis of serous [sic] bodily injury attempted . . . ." (Doc. 23-3 at 8.)  As a result, the PCRA court held that Kirkland's claim was meritless, and consequently trial counsel was not ineffective for failing to raise a meritless claim.

The Superior Court affirmed the PCRA court's finding.  Specifically, the court agreed that "the victim's testimony clearly established an attempt to cause serious bodily injury," and noted that a "person is guilty of aggravated assault if he attempts to cause serious bodily injury to another." (Doc. 23-4 at 10) (citing 18 Pa. C.S.A. § 2702(a)).  The court also stated that, "[s]ince the knife was directed at the victim's throat, we believe the undisputed evidence did not support a rational inference that [Kirkland] merely intended to cause bodily injury as opposed to serious bodily injury." (Doc. 23-4 at 10.)  As a result, the court found that a "simple assault instruction would have been inappropriate." (*Id*.)  The court also agreed with the PCRA court that trial counsel cannot be deemed ineffective for failing to raise this meritless claim.  (*Id*.)

Upon review of the instant claim, this court concludes that the state court's decision that Kirkland's claim of entitlement to a jury instruction on simple assault was without merit is based on a reasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C. § 2254(d)(2). The testimony at trial supports the conclusion that an instruction on simple assault would have been inappropriate. Furthermore, Kirkland has failed to establish ineffective assistance of counsel here because not only is the underlying claim meritless, but also trial counsel's PCRA testimony regarding the absence of such an instruction demonstrates sound trial strategy. *See Strickland*, 466 U.S. at 689. Consequently, the state court decision is not an unreasonable application of clearly established federal law, and the instant claim should be denied.

## IV.   Conclusion

Based on the foregoing determination that Kirkland has failed to meet his burden on all issues, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: December 4, 2007.

28

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEXTER OMAR KIRKLAND,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-06-01447** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **RAYMOND J. SOBINA,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |

## O R D E R

Upon consideration of the amended petition for writ of habeas corpus (Doc. 10), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The amended petition for writ of habeas corpus (Doc. 10) is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

3. There is no basis for the issuance of a certificate of appealability.  *See* 28 U.S.C. § 2253(d).

                      s/Sylvia H. Rambo
                      SYLVIA H. RAMBO
                      United States District Judge

Dated: December 4, 2007.